Philip STEIN and Kathryne Stein, Husband and Wife, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 20011.

United States Court of Appeals
Fifth Circuit.

Sept. 10, 1963.

Henry Klepak, Dallas, Tex., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Crane C. Hauser, Chief Counsel, I. R. S., Rollin H. Transue, Atty., I. R. S., Joseph M. Howard, John M. Brant, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before RIVES and GEWIN, Circuit Judges, and SHEEHY, District Judge.

SHEEHY, District Judge.

This is an appeal from a decision of the Tax Court upholding the assessment of income tax deficiencies against the petitioners because of the action of the Commissioner in disallowing certain gambling losses that the petitioner Philip Stein, hereinafter referred to as Stein, claimed to have sustained during 1952, 1953 and 1954, respectively.

Stein was a professional gambler during the years here involved—1952, 1953 and 1954. His wife, Kathryne Stein, is involved herein only because she signed joint income tax returns with her husband during those years.

Petitioners filed tax returns showing a net profit from gambling in the sum of $16,141.58 for 1952, $9,561.00 for 1953 and $4,694.00 for 1954. Stein's actual winnings from gambling were in greater amounts for each of the three years, but in arriving at the above net profit figures, he subtracted certain daily net gambling losses which he claimed to have sustained during those years. The Commissioner disallowed certain of the claimed losses, viz., $34,029.50 for 1952, $29,802.00 for 1953 and $3,932.00 for 1954, and adjusted the net income for the years involved accordingly, with resulting deficiencies in tax which are the subject matter of this action.

Most, if not all, of the income of Stein was derived from his gambling activities, including playing poker and gin rummy, shooting dice and betting on sports events such as football games, basketball games and golf tournaments. While he did not engage in bookmaking and did not operate a gambling establishment of any kind, he traveled extensively during the years in question and engaged in gambling activities in various cities where he stayed for short periods. He gambled individually during each of the years in issue and during 1952 he also gambled with a partner by the name of Rechenberg.[1]

At the trial in the Tax Court Stein testified that he had no independent knowledge of his winnings and losses from gambling during the years in question, and that he could not testify as to any of his winnings or losses during those years except as such winnings or losses are reflected by certain notebooks, which he offered in evidence as purportedly summarizing his daily gains and losses during each year. There were four of these notebooks. Two of them purported to show daily gains and losses for the year 1952, one of them purported to show the same information for 1953 and the remaining notebook purported to show the same information for 1954. Of the two notebooks purporting to show such information for 1952, one purported to show such information as to the gambling done by Stein individually during that year and the other purported to show such information as to the gambling done by Stein for the Stein-Rechenberg partnership during that year.

As to the manner in which he kept account of his daily losses and winnings in his gambling activities and as to the manner in which he made the entries in the notebooks, above referred to, Stein testified that, except during such times as he was gambling for the partnership during 1952, he would generally carry two rolls of money—one roll out of which he would gamble in one pocket and one roll out of which he would make personal expenditures in another pocket; that at the starting of a day of gambling he would count the money in his gambling bankroll and at the end of the day he would again count the gambling bankroll; that the difference between the amount of money in the gambling bankroll at the beginning of the day and the amount of money in the gambling bankroll at the end of the day would be the amount of his winnings or losses, as the case might be, for the day; that he would use slips of paper such as cocktail napkins, match folders, soap wrappers,

---

1. Of the sum of $16,141.58 shown on petitioners' tax return for 1952 as the net profit from gambling, the sum of $4,871.-84 was shown as Stein's net profit from the gambling partnership.

etc. that might be available and write down the date, the amount of his winnings or the amount of his losses, as the case might be, for the day, placing the letter "W" on the slip of paper in case the amount written thereon represented winnings, or placing the letter "L" on the slip of paper in case the amount written thereon represented losses; that he would place these slips of paper in his pocket and when he returned home, he would place them in a drawer; that these slips of paper so placed in said drawer from time to time would remain in said drawer until the end of the year; that at the end of each year he would take the slips of paper from the drawer and from the information contained thereon make the entries that were made in the notebook for that particular year; that upon that being done, the slips of paper were destroyed; that each entry in the notebooks correctly show the date he gambled, the amount of money he had in the gambling bankroll at the beginning of that day, the amount of money he had in the gambling bankroll at the end of that day and the net amount of money he won or lost, as the case might be that day, with the net winnings being designated as "in" and the net losses being designated as "out"; that, if at any time he did not have enough money in his personal bankroll to pay a personal expense, he would take money from the gambling bankroll to pay the personal expense and would put a slip of paper showing the amount taken from the gambling bankroll for personal expense in the gambling bankroll; and that these last mentioned slips would be placed in the drawer with the other slips, above referred to, and at the end of the year would be taken into account.

Stein further testified that when he gambled for the partnership and also gambled individually, he generally carried three rolls of money—one roll for his individual gambling, one roll for the partnership gambling and one roll for his personal expenses—and that each of said bankrolls was kept in a separate pocket. As to the manner in which he kept up with the partnership daily winnings or losses, and as to the manner in which he compiled the notebook at the end of 1952 showing the partnership winnings and losses, he testified, in effect, that the same procedure was followed that was followed as to his individual gambling.

Stein produced and offered in evidence a box containing a number of pieces of paper of various types, including cocktail napkins, match folders, soap wrappers, cards, etc., which he testified represented the pieces of paper on which he recorded his daily winnings or losses during 1952 and were the records from which he compiled the notebook showing his winnings and losses in his individual gambling activities during that year. He stated that he found the box containing these pieces of paper while cleaning out his garage shortly before the trial. No such slips were produced for either of the other years in question.

The following two entries in the notebook offered in evidence by petitioners as reflecting Stein's individual winnings and losses for the year 1952 are illustrative of the entries made in the notebooks above referred to:

|     | Jan 5 |     |     | Jan 14 |
|-----|-------|-----|-----|--------|
|     | 1615  |     |     | 3629   |
| in  | 2014  |     | out | 1126   |
|     | 3629  |     |     | 2503   |

According to Stein's testimony these entries would indicate that at the beginning of the day on January 5, 1952, Stein had in his individual gambling bankroll the sum of $1,615.00 and at the end of that day had in his bankroll $3,629.00, with resulting net winnings for that day in the amount of $2,014.00, and that at the beginning of the day on January 14, 1952, Stein had in his gambling bankroll the sum of $3,629.00, and at the end of that day had in his bankroll the sum of $2,503.00, with a resulting net gambling loss for that day in the amount of $1,126.00. We find in the box containing a number of pieces of paper of various

types, as above referred to, a match folder on which there is written in ink "Jan 5-52" and "W 2014" and another match folder on which there is written in pencil "Jan 14-52" and "L 1126." While the notations on the match folders, according to Stein's testimony, would indicate that on January 5, 1952, Stein had a net gambling gain of $2,014.00 for that day, and that on January 14, 1952, Stein had a net gambling loss for that day of $1,126.00, there is nothing on either folder that would indicate the amount of money Stein had in his gambling bankroll at the beginning of the day.

Two Internal Revenue Agents called as witnesses for the respondent testified, in effect, that in 1956, when they were conducting an investigation of petitioners' returns for the years in question, Stein appeared in their office and under oath stated to them, in effect, that the only records kept by him as to his gambling gains and losses were the notebooks, above referred to, which were carried around by him from day to day, and that the entries in said notebooks were made by him at the end of each day of gambling and were not made from other memoranda. The Agents further testified that Stein did not tell them anything about keeping daily records of his winnings and losses on pieces of paper such as match folders, napkins, cards, etc.

For each of the years in question petitioners reported on their tax return as income from gambling the total of the amounts shown in the notebook for that year as being daily net gains from gambling, which were marked "in," less the total of the amounts shown in the notebook as net daily gambling losses, which were marked "out." The Commissioner in determining the deficiencies that are the subject matter of this action used the entries contained in the notebooks above referred to. He accepted the daily net winnings as shown by the notebooks, but he disallowed the daily net losses as shown by said notebooks.

The total of the daily net losses were added by the Commissioner to the total of the daily net winnings, and the sum thereof was determined to be petitioners' income from gambling. That action of the Commissioner resulted in the assessment of the deficiencies in question. The Commissioner did not disallow all of Stein's claimed gambling losses during the years in issue, as he did not undertake to disallow any such losses that might have occurred on days that Stein ended up with a net gain as shown by the entries made in his notebooks.

The Tax Court in findings of fact and an opinion not officially reported, concluded that Stein did not keep regular, verifiable and adequate records of his gambling transactions for the years involved as required by Treasury regulations [2] and found that Stein did not realize gambling losses during 1952, 1953 and 1954 in amounts greater than those allowed by the Commissioner for those years. Based on that finding, the action of the Commissioner in disallowing Stein's claimed gambling losses that were disallowed was upheld. In assailing said finding and conclusion of the Tax Court, petitioners contend that Stein's records truly reflect his winnings and losses and that the Tax Court erred in refusing to allow Stein to deduct his daily net gambling losses as listed in the notebooks for each of the years involved; that the Tax Court erred by not giving credence to the entries in the notebooks that showed daily net gambling losses when it had accepted the entries in said notebooks showing daily net winnings; and that the Tax Court erred in refusing to invoke the rule adopted in Cohan v. Commissioner, 2 Cir., 39 F.2d 540, and allow Stein gambling losses in addition to those allowed by the Commissioner.

■ Upon review, findings of fact made by the Tax Court are to be treated in the same manner as findings of fact made by a District Court sitting without a jury, and, therefore, such findings of

2. See Section 39.54–1, Treasury Regulations 118 (1939 Code) and Section 1.-

6001–1, Treasury Regulations on Income Tax (1954 Code).

the Tax Court are not to be set aside on appeal unless they are "clearly erroneous." Duval Motor Co. v. Commissioner, 5 Cir., 264 F.2d 548, 551; Smith v. Commissioner, 5 Cir., 249 F.2d 218, 220; Lengsfield v. Commissioner, 5 Cir., 241 F.2d 508, 510; Archer v. Commissioner, 5 Cir., 227 F.2d 270, 272; and Burford-Toothaker Tractor Co. v. Commissioner, 5 Cir., 192 F.2d 633, 635, Cert. denied, 343 U.S. 941, 72 S.Ct. 1033, 96 L.Ed. 1347.

■■ The Commissioner having determined the tax deficiencies in question, his determination is deemed *prima facie* correct, and the burden was on the petitioners to prove that such determination was erroneous. Healy v. Commissioner, 345 U.S. 278, 283, 73 S.Ct. 671, 97 L.Ed. 1007; and Archer v. Commissioner, supra. Such deficiencies having resulted from the disallowance of certain claimed gambling losses, the burden was clearly on Stein to establish by competent evidence that he sustained gambling losses disallowed by the Commissioner and the amount thereof. Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991.

■ In his effort to establish the disallowed gambling losses, Stein offered only his meager records which, in the case of the notebooks above referred to, did not contain original entries, and his own testimony that the records correctly stated his gambling losses. The records contained no details, no record of any payment to any individual or group and no statement of total winnings or total losses but merely Stein's conclusions as to the daily net results of his gambling. There was no manner in which the records could be verified. Their trustworthiness and verity can rise no higher than the credibility of Stein's testimony to the effect that they truly state his net losses. It was for the Tax Court to determine the credibility that was to be afforded the testimony of Stein and the verity that was to be afforded his records. As above indicated, Stein made contradictory statements as to how and when he made the entries in the notebooks. Reflecting upon the Tax Court's opinion as to Stein's credibility, the following statement was made in its opinion:

"Because of certain contradictions between his statements at the trial and some of the answers he gave under oath to the respondent, the testimony of petitioner is not entirely beyond suspicion."

The Tax Court, in the circumstances of this case, was not bound to accept as true either the entries in the notebooks showing daily net gambling losses or the testimony of Stein that said daily net gambling losses were actually sustained by him.

■ It was not error for the Tax Court to accept the entries in Stein's notebooks that showed daily net gambling winnings and fail to give credence to the entries in said notebooks that showed daily net losses. The entries showing daily net gambling winnings were in the nature of declarations against interest while the entries showing daily net losses were in the nature of self serving declarations. As stated by the Court of Appeals for the District of Columbia in Plisco v. United States, 306 F.2d 784, 787, Cert. denied, 371 U.S. 948, 83 S.Ct. 505, 9 L.Ed.2d 499, a case in which the Commissioner, like in the instant case, accepted the records of the taxpayers, who were gamblers, insofar as they reflected daily net winnings but refused to accept said records insofar as they reflected daily net losses from gambling:

"We think, however, that since appellants had no incentive to overstate their daily profit figures in order to increase their taxes, the Commissioner could reasonably accept these figures as minima. On the other hand, since appellants did have an incentive to overstate their daily loss figures in order to reduce their taxes, the Commissioner could reasonably reject these figures in the absence of any data which would provide a basis for testing their reasonableness."

Also see Showell v. Commissioner, 9 Cir., 238 F.2d 148, 152.

This is not a proper case for invoking the rule laid down in Cohan v. Commissioner, supra. In that case Cohan was a theatrical manager and producer who, in carrying on his business, was required to incur entertainment expenses in substantial amounts. He kept reliable gross income records but kept no reliable records of his business entertainment expenses. The Tax Court found that Cohan had made some allowable expenditures for entertainment yet gave him credit for none. The Second Circuit held that in those circumstances it would be arbitrary to disallow all claimed business expenses and remanded the case to the Tax Court directing it to estimate the entertainment expenses incurred by Cohan. In the instant case there is no finding that gambling losses greater than those allowed by the Commissioner were incurred by Stein. On the contrary there is the express finding of the Tax Court to the effect that Stein did not suffer gambling losses during the years in question in amounts greater than those allowed by the Commissioner. In view of that finding of fact, there are no gambling losses to estimate. As to the Cohan rule, this Court, speaking through Judge Brown, in Williams v. United States, 5 Cir., 245 F.2d 559, 560, stated:

"That the trier, whether District Court or Tax Court, might have considerable latitude in making estimates of amounts probably spent in the light of accepted practice amongst law-abiding businessmen of moral standing considering the nature and kind of records which might reasonably be kept for such expenditures, Cohan v. Commissioner, 2 Cir., 39 F.2d 540, 543, certainly does not require that such latitude be employed. *The District Court may not be compelled to guess, or estimate.* It may not be compelled to estimate even though such an estimate, if made, might have been affirmed. For the basic requirement is that there be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse." (Emphasis supplied)

In light of what has been stated above, we find and conclude that the finding of the Tax Court to the effect that Stein did not realize gambling losses during any of the years in issue in amounts greater than those allowed by the Commissioner is not clearly erroneous and, therefore, the judgment of the Tax Court is

Affirmed.