Harry Bennett v. Commissioner.
Bennett v. Commissioner
Docket No. 1085-64.
United States Tax Court
T.C. Memo 1968-71; 1968 Tax Ct. Memo LEXIS 226; 27 T.C.M. (CCH) 365; T.C.M. (RIA) 68071; April 23, 1968. Filed *226 Petitioner, a resident of Biloxi, accepted wagers on sporting events such as baseball and football games. He rented an apartment in New Orleans and accepted wagers there. He was in partnership with two other men in New Orleans in 1958 and 1959. In 1960 he operated alone. All wagers were made by telephone and all transactions handled in cash. He paid the tax on wagering on the gross amount of wagers, which is stipulated. His records were incomplete, no receipts were retained and payments to winning bettors were not recorded or traceable. He reported on his income tax returns a part of the gross wagers after deducting amounts allegedly paid to winning bettors and unsubstantiated amounts for expenses. Held: (1) Amount of payments to winning bettors determined under the Cohan rule; (2) Deductions for apartment rental and robbery loss determined; (3) Disallowance of other expenses claimed sustained; and (4) Addition to tax for negligence, sustained. William E. Logan and Floyd J. Logan, Hatten Bldg., Gulfport, Miss., for the petitioner. Robert D. Hoffman, for the respondent. BRUCE *228 Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for negligence or intentional disregard of rules and regulations for the calendar years 1958, 1959 and 1960 as follows: Year
Deficiency
Addition to Tax Sec.6653(a), I.R.C. 1954
1958
$11,078.27
$553.91
1959
4,735.10
236.76
1960
10,759.57
537.98
The issues for decision are (1) what was the amount of petitioner's income from wagering; (2) whether certain additional business expenses claimed by petitioner in an amended petition are allowable as deductions; and (3) whether part of the underpayment for each year was due to negligence or intentional disregard of rules and regulations. Findings of Fact The stipulation of facts and the exhibits attached thereto are incorporated by reference. The petitioner was a resident of Biloxi, Mississippi at the time his petition was filed. He filed individual Federal income tax returns for the calendar years 1958, 1959 and 1960 with the district director of internal revenue at Jackson, Mississippi. During *229 the years 1958, 1959 and 1960, petitioner's principal occupation was that of a professional gambler. He filed returns of the Federal tax on wagering, Form 730, for each month in these years except for January 1959. The amount of gross wagers accepted and the amount of wagering tax paid in each year by petitioner and his partners in 1958 and 1959 and by petitioner in 1960 were as follows: Year
Gross Wagers
Tax Paid
1958
$94,301.00
$9,412.50
1959
62,124.00
5,379.60
1960
36,082.00
3,584.70
During the years 1958, 1959 and 1960 petitioner paid Western Union and Southern Bell Telephone Company amounts aggregating $545.40, $982.32, and $1,466.53, respectively. These were ordinary and necessary expenses of his business. On November 10, 1960, at New Orleans, La., petitioner was the victim of an armed robbery wherein he was robbed of $1,623. A report of the robbery was made to the local police and to the Federal Bureau of Investigation. Although suspects were apprehended, none of petitioner's funds were recovered. Petitioner's gambling operation was that of a price maker or bookmaker. He offered odds on sporting events such as baseball or football games. *230 The business was handled exclusively by telephone. Bettors could call his telephone number, ask the odds offered, and make or refuse a bet. He would accept 366 "layoff" bets from other bookmakers who wished to hedge. His bookmaking business originated in Biloxi, where he and his wife owned a house, and where he had an office in the rear of a club. In 1957 he moved his business to New Orleans, La. in the hope of expanding his operations. In 1958 and 1959 he operated in partnership with two other men, Jake Atz and Vic Costello. In New Orleans petitioner rented an apartment in Claiborne Towers and owned "one-half of a small house." His partners had an office at another location, referred to as "Veterans Highway." At each place several telephones were installed for taking wagers. Petitioner had a Western Union ticker service reporting the progress and the results of the games. He also maintained a direct telephone line to Biloxi for the purpose of accepting wagers from bettors at that location. Petitioner also played poker and had winnings from this which he did not report on his income tax returns. In accepting wagers petitioner's practice was to record each bet on a slip of *231 paper. After the event the slips would be marked "W" or "L" according to whether the bet was won or lost and the bettors who won would be paid off. During a part of the years 1958 and 1959, the partners kept a record showing the total amount of wagers accepted each day and the total amount won by the partnership. The individual betting slips were not retained. Petitioner kept a record showing the monthly totals of the gross wagers accepted, an amount labelled "expense," and the amount won by the partnership. At the end of the year the expenses were deducted from the amount won, and the remainder was divided among the partners, 25 percent to Costello, and 37 1/2 percent each to Atz and petitioner. This computation was furnished to his attorney for use in preparing petitioner's income tax return. No partnership returns were filed by this partnership. Petitioner's records for 1958 and 1959 show as "booked," the gross wagers accepted each month by the partners, in agreement with the amounts reported on the wagering tax returns, and an amount for January 1959 for which month no such return was filed. The records show an amount marked "expense," but the expenses are not itemized or explained. *232 An amount is shown as "win," which petitioner represents was the amount of gross wagers retained by the partners after payments to winning bettors. These records show totals for the years as follows: 1958
1959
Booked
$94,301.00
$62,124
Win
39,700.00
27,698
Expense
3,353.00
1,450
Net
36,347.00
26,248
Costello
9,086.75
6,562
Atz
13,630.12
9,743
Bennett
13,630.12
9,743
Petitioner claimed a "personal loss" of $4,755 in 1958 and reported on his income tax return $8,875.12 as his income from his business. For 1959 he reported $9,743. The $200 error in the distribution in 1959 was overlooked. At the end of 1959 petitioner ceased to operate in partnership with Atz and Costello. He carried on his business alone. He maintained a record of wagers accepted showing daily totals for the period from April 11, 1960, to the end of September 1960, and weekly totals for the last three months of that year. This record shows total wagers, amounts paid off, and amounts won. Hee also kept a sheet for the year 1960 showing weekly totals and another with monthly totals for amounts booked, expenses and winnings. The daily and weekly record shows total wagers, *233 amounts paid off, and amounts won. This record for April 1960 shows total wagers of $2,891, paid out $1,029, won $1,781; then the payout is deducted a second time, leaving a figure of $752, from which is deducted expenses of $50, leaving $702 as the amount of net winnings. The records for other months contain many errors. The records for October, November and December are incomplete, but purport to show a loss of $1,131 after expenses for October, and a loss of $355 after expenses for November. That for December indicated a net amount won of $295 after expenses. The income tax return prepared from this record showed total wagers for each month aggregating $36,082 for the years. An amount of $1,558 was shown for expenses, but there was no identification or explanation of the expense. The amount won was reported as $9,644 after deducting the losses in October and November. This amount was reported on the tax return as net profit from business and the expense item of $1,558 was not deducted in computing taxable income. Petitioner paid the following amounts to Claiborne Towers for room, telephone, maid service and other expenses: 1958
$2,519.02
1959
2,585.50
1960
2,607.91
*234 367 Petitioner's income tax returns were prepared by Ernest Martin, an attorney in Gulfport, Miss., who had prepared returns for other gamblers. The returns were based upon the summary sheets petitioner made from his daily records, which summary sheets showed only the monthly total wagers, total expenses and amounts won or lost. The expenses were not itemized and petitioner has no verification or supporting receipts. On the returns for 1959 and 1960 a standard deduction of 10 percent of the adjusted gross income was claimed in the respective amounts of $974.30 and $964.40. None of the returns claimed deductions for the wagering taxes paid by the partners or by the petitioner. Petitioner had various dealings with the Hancock Bank, of Gulfport, Miss., and with Walter B. Stewart, a vice president of that bank. In the years 1952 to 1956, petitioner was experiencing difficulties with the Internal Revenue Service and feared that the Government might place a lien on his home and other property. On November 5, 1952, petitioner executed a note for $15,000 payable to the Hancock Bank and a deed of trust securing such loan with real property owned by petitioner and his wife. On November 25, 1953 he *235 executed a new note and similar deed of trust for $18,000 to the bank. He signed similar notes and deeds of trust in March 1954 for $20,877; in March 1955 for $20,677.50; and in April 1956 for $26,000. In an action against the Hancock Bank commenced by petitioner in July 1965, he stated that the foregoing notes and deeds of trust were spurious transactions intended to create a prior lien in the bank in order to prevent the Government from having a first lien upon his properties for income taxes. In an action brought by the Hancock Bank against petitioner and his wife, they, as defendants, filed an answer and crossbill executed in March 1963. Petitioner alleged therein that Stewart stated to him on November 5, 1952, that the bank was in need of a showing of an indebtedness and some collateral to the extent of $15,000, that petitioner agreed to help the bank to that extent, that petitioner signed a note and deed of trust in that amount and also signed his wife's name without her authority, knowledge and consent, that no consideration passed from the bank to petitioner, and that the renewals and later deeds of trust were similarly spurious and without consideration. In the pleadings *236 in these two proceedings involving the Hancock Bank petitioner alleged that from and after March 1957 the bank owed him $93,000. Petitioner and his wife on September 1, 1959, executed a statement of their financial condition in support of an offer in compromise of income tax liabilities showing the following assets: Cost
Fair Market Value
Forced Sale Value
Cash
$ 1,500.00
Home
20,000.00
$34,000
$20,000
Vacant Lot
2,500.00
2,500
Automobile 5,000.00
2,500
2,500
Totals
$29,000.00
$36,500
$25,000
Mortgages
$25,663.00
Judgments
3,470.68
Unpaid interest & taxes
200.00
Indebtedness on car
3,000.00
Gross income 1957-1958
$18,903.12 The statement represented that the Hancock Bank had agreed to lend the taxpayers the funds for the compromise and to accept an additional increase in the mortgage on taxpayer's realty. Respondent determined that the income of petitioner and the partnership from wagering was in the amounts of the gross wagers reported on the wagering tax returns, after allowing deduction of the wagering tax paid and certain verified amounts for telephone and telegraph expenses. This computation made no allowance *237 for amounts which they deducted as payments to winning bettors. Respondent also disallowed a deduction of $4,755 claimed on petitioner's return for 1958 as a personal gambling loss on the ground that such loss was not established. 368 In an amended petition filed nearly three years after the original petition, and only 20 days before the scheduled hearing, petitioner claimed amounts as deductible expenses in addition to those shown on his returns, in the following amounts: Item
1958
1959
1960
Western Union
$ 746.00
$ 1,316.50
$ 1,060.50
Miss. Power
160.62
114.82
204.02
United Gas
132.49
74.78
67.55
Claiborne Towers
2,519.02
2,585.50
2,607.91
Direct Telephone
6,000.00
3,600.00
3,600.00
Atz Stock Loss
7,500.00
Legal Fee
10,000.00
Robbery Loss
2,600.00
Total
$17,058.13
$17,691.60
$10,139.98 In this petition he claimed a deduction for the amount of $499.30 paid as wagering tax for January 1959 in addition to the amounts allowed by the respondent for the other 35 months of the taxable years. Petitioner and his partners in 1958 and 1959, and petitioner in 1960, paid out as loses on wagers amounts equivalent to at least *238 25 percent of the amount of gross wagers accepted. The cost of the petitioner's apartment at Clairborne Towers was a business expense of petitioner or the partnership to the extent of 50 percent. Petitioner did not keep regular, verifiable and accurate records of his business transactions in 1958, 1959 or 1960. Part of the underpayment of petitioner's income tax for each of the years 1958, 1959 and 1960 was due to negligence or intentional disregard of rules and regulations. Opinion Petitioner was by profession a gambler. He offered odds or prices for betting on sports events, such as baseball or football games. He received wagers by telephone, maintaining ten or more telephones for incoming calls. He recorded each bet on a slip of paper. After the event, he paid off the winners and collected from the losers. He made a record purporting to show the gross wagers accepted each day. From this record he made monthly returns (except for January 1959) of the wagering tax imposed by section 4401, Internal Revenue Code of 1954. Section 4403 requires that each person liable for this tax keep a daily record showing the gross amount of all wagers on which he *239 is so liable. Petitioner's records also showed for each month an amount purporting to represent the amount won from the gross wagers, and an amount marked "expenses," without describing or enumerating the items included. His income tax returns were prepared from this record. Petitioner has created many difficulties for himself. During the taxable years he paid all his expenses in cash and failed to retain receipts in support of his payments. He failed to maintain original records of his payments to winning bettors, or to record their names. He destroyed the individual betting slips. He failed to produce his former partners at the hearing to verify his claims or support his meager records. He has made inconsistent statements concerning some transactions. If the financial statement dated September 1, 1959, submitted in connection with an offer in compromise of tax liabilities for earlier years, he alleged that he had only $1,500 in cash, his home and a vacant lot, both subject to a mortgage, and one automobile, also mortgaged. He omitted to mention therein certain other assets disclosed by his testimony herein, such as a 37 1/2 percent share of the partnership bankroll used for betting *240 purposes which he testified amounted to $140,000, one-half of a small three-bedroom house in New Orleans, and a claim against the Hancock Bank in Gulfport, for an alleged debt of $93,000. In connection with this bank he made two contradictory sworn statements concerning a series of notes and deeds of trust securing them which he signed and gave the bank. In one statement he represented that these were spurious transactions requested by an officer of the bank to help the bank show additional assets to the extent of the notes. In a later statement he alleged that the purpose of these spurious notes and deeds of trust was to create a prior lien in the bank against his house to prevent the Government from securing a first lien on that property for income taxes. He claimed a robbery loss of $2,600 when 369 the police record showed a loss of $1,623. He admitted that his poker winnings were not reported on his income tax returns. Under these circumstances his own testimony is of doubtful value and his records are not trustworthy. His only supporting witnesses were his son, who was some 18 to 20 years old in the taxable years and who sometimes paid certain expenses in cash furnished by *241 petitioner, and his nephew, from whom he had borrowed money and who sometimes placed wagers with him. The parties have stipulated the amount of the gross wagers, this being the amount shown as such according to petitioner's records and tax returns. Respondent allowed deductions for the wagering taxes actually paid and the stipulated telephone and telegraph expenses which have been verified by respondent as having been paid by petitioner. Respondent argues that the amount reported as gross wagers was probably the net amount realized after payouts and expenses. The income tax returns do not claim deductions for wagering tax, nor for telephone or other specific business expenses as such. Respondent would allow no deductions for losses or payouts nor for expenses except those identified as stated above. In Plisco v. United States, 306 F. 2d 784 (C.A.D.C., 1962), cited by respondent, the partners in a gambling enterprise computed each day's profit or loss by subtracting payouts and losses from the winnings and recorded the net profit or loss figure. The Commissioner accepted the daily profit figures as admissions against interest but rejected the loss day figures as self-serving. *242 The court concluded that the Commissioner could reasonably accept the taxpayer's figures as to profits and could reasonably reject the figures as to losses, when they were unsupported by corroborative evidence. Similarly, in Stein v. Commissioner, 322 F. 2d 78 (C.A. 5, 1963), affirming a Memorandum Opinion of this Court, the Court of Appeals said that it was not error for the Tax Court to accept the taxpayer's entries which showed daily net winnings from gambling and fail to give credence to entries in such records which showed additional daily net losses. Respondent argues that, pursuant to these cases, petitioner's gross wagers reported may be accepted and his claimed losses rejected as unproved. In the foregoing cases the figures accepted as income were net amounts won after deducting payouts or losses for the day and were not gross wagers. The present case is different. Here respondent stipulated the amount of the gross wagers accepted in 1958 and 1959 by the partnership and in 1960 by petitioner, these amounts being those shown as such by petitioner's records. Taking into consideration the obvious fact that petitioner and his partners could not have carried on an *243 extensive betting operation without losses on some of the wagers placed with them, we are unable to agree with respondent that no allowance whatever is to be made for losses on the gross wagers accepted. In the absence of better evidence, the case calls for application of the rule laid down in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), and using our best judgment on the record we have found as a fact that 25 percent of the amounts of the gross wagers were paid out on lost bets. Petitioner deducted the amount of $4,755 from his share of the partnership distribution in 1958 in reporting his business income on his tax return. Respondent disallowed this deduction. Petitioner explains this as being a personal gambling loss which arose when his partners had reached a limit of wagers to be accepted on a particular game and petitioner took the additional wagers offered at his own risk. He says this is the amount he lost on accepting bets which his partners would not assume. There is no corroboration whatever of this and no record evidence beyond petitioner's statement. We must sustain respondent's disallowance of the deduction claimed. Shortly before the hearing in *244 this case, petitioner filed an amended petition claiming substantial deductions alleged to be in addition to the deductible expenses shown on his returns and claimed in his original petition. One of these was for amounts paid to Claiborne Towers for room rent, telephone service, maid service, and other charges, which petitioner contends are deductible as business expenses and respondent contends are nondeductible personal expenses. The parties have stipulated the amounts paid. There is testimony that petitioner had several telephones at this apartment and received wagers there. It was also testified that he sometimes slept there, and that he played poker there. The evidence is to the effect that the apartment was used partly for business and partly for personal purposes. Petitioner maintained a home in 370 Biloxi, and was in New Orleans primarily to further his business. We find that onehalf the expenses of the apartment is deductible as a business expense. Petitioner alleges that he maintained a direct telephone line from New Orleans to an office in Biloxi for accepting wagers from bettors in Biloxi, that he used this line for 30 to 40 calls per day, and that this cost $6,000 *245 in 1958 and $3,600 in each of the later years. Petitioner furnished no receipts or cancelled checks, nor has he produced any records from the telephone company which would have shown such payments. In the absence of any corroborative evidence of this telephone expense we find that petitioner has failed to carry the burden of proving that he is entitled to any deduction for this item. Petitioner alleges that he lost $7,500 in 1958 in a stock venture with his partner Atz. He said that Atz wanted money to invest in a business making foam rubber mattresses and plastic products, that petitioner endorsed a note for Atz to borrow $15,000, to invest half for Atz and half for petitioner and that the venture lost money and never repaid the investment. There has been no supporting record of this transaction. This claim was not made in the petitioner's tax returns or in the original petition. It was made in the amended petition more than 8 years after the alleged investment and the names of persons who might confirm the allegations have not been revealed. Respondent has not been furnished sufficient information to permit verification of the claim. Petitioner has not borne the burden of proving *246 that there was such an investment, that it was lost, or when it was lost. He is not entitled to any deduction for this alleged loss. Buntin and Martin, a firm of attorneys at Gulfport, represented petitioner in a matter relating to his income taxes for 1950-1951. Martin prepared petitioner's income tax returns for 1958, 1959 and 1960. Petitioner alleges that he paid Robert Buntin a legal fee of $10,000 in 1959 for services in a tax case and is entitled to a deduction for this expense. The return for 1959 prepared by Buntin's partner did not claim a deduction for $10,000 for this fee as a business expense. Had it been paid, that fact must have been known to Martin. Petitioner testified that Buntin later gave him a note for $10,000. This appears to be a loan rather than payment of an expense. Subsequently Buntin sued petitioner for the fee and secured a judgment for a lesser amount after the taxable years. Petitioner has furnished no evidence sufficient to support the deduction here claimed. Petitioner claimed a deduction for a loss of $2,600 by robbery in 1960. It is stipulated that petitioner was a victim of an armed robbery in November 1960 wherein he was robbed of $1,623. He *247 is entitled to a deduction for $1,623 as a loss by theft. Income Tax Regs., section 1.165-8(d). Certain other deductions were claimed in the amended petition for utilities and telegraph services. Petitioner presented no evidence to establish that such expenses were incurred or paid. The claim must be rejected. In the original petition, petitioner alleged error by respondent in disallowing a part of the standard deduction claimed on the returns for 1959 and 1960. These returns claimed deductions of ten percent of the adjusted gross income reported, which deductions amounted to $974.30 and $964.40 respectively. Under section 141(a) of the Internal Revenue Code of 1954, in the case of a separate return by a married individual the standard deduction shall not exceed $500. Respondent correctly disallowed the amount claimed in excess of $500. Petitioner claims a deduction for a wagering tax payment of $499.30 for January 1959. Respondent's records show no payment for that month. Petitioner has not proved that this was paid. He is not entitled to this deduction. Petitioner contests the addition to tax for negligence or intentional disregard *248 of rules and regulations. Petitioner says that Martin, who prepared his income tax returns, was experienced in preparing returns from gamblers and that petitioner furnished Martin all his records, hence the addition to tax is not justified. The Income Tax Regulations require every person subject to the income tax to keep such permanent books of account or records as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax. Section 1.6001-1(a). Petitioner introduced in evidence the summary sheets which were given the attorney for the preparation of the returns. For each year a single page was kept showing monthly totals. The only supporting 371 records were sheets showing daily or weekly totals of wagers, winnings and expense, without details. These were not furnished to Martin. They contained many mistakes in computation. In some pages double deductions were taken. Petitioner kept no receipts for expenses nor identification of payes to permit verification. His records were inadequate. The addition to tax was made because the petitioner failed to maintain proper records. The addition *249 was fully justified. At least a part of the underpayment of tax for each year was due to negligence or intentional disregard of rules and regulations. Decision will be entered under Rule 50.