SALVADORE S. TAORMINA and JUSTINA TAORMINA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taormina v. Commissioner
Docket No. 7539-74.
United States Tax Court
T.C. Memo 1976-94; 1976 Tax Ct. Memo LEXIS 311; 35 T.C.M. (CCH) 400; T.C.M. (RIA) 760094; March 24, 1976, Filed *311 Petitioners reported as income winnings on racetrack wagers in the amount of $15,909.60 and claimed offsetting losses in the same amount. Respondent disallowed all but $4,454 of the losses claimed. Amount of deductible losses redetermined. Salvadore S. Taormina and Justina Taormina, pro se. Robert J. Percy, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $2,750.40 in petitioners' joint Federal income tax liability for the taxable year ended December 31, 1971. The only issue presented for decision is whether petitioners are entitled to a deduction for wagering losses, pursuant to section 165(d), I.R.C. 1954, [1] in excess of the amount allowed therefor by respondent. *312 FINDINGS OF FACT Some of the facts have been stipulated and are accordingly so found. Petitioners Salvadore S. and Justina Taormina are husband and wife who resided with their three children in Monaca, Pa., at the time they filed the petition herein. Petitioners reported their income and deductions according to the cash receipts and disbursements method of accounting. Their joint individual income tax return for the taxable year 1971 was filed with the Philadelphia Service Center, Philadelphia, Pa.
During 1971, petitioner Salvadore S. Taormina (hereinafter referred to as petitioner or Salvadore) frequented racetracks where he engaged in regular wagering activities. Although he occasionally went to other tracks, petitioner attended primarily the Waterford Park racetrack in Chester, W. Va. Most of the betting tickets petitioner purchased were $2 perfecta or daily double tickets. Petitioner was not a professional gambler; rather he was an addicted racehorse player. Both Salvadore and Justina reported income from wages in 1971. Petitioner *313 usually went to the racetracks at night three to five times a week when they were open. On their income tax return for 1971, in addition to combined salary in the amount of $12,464 and a commission of $50, petitioners reported $15,909 in racetrack winnings which consisted of eitht separate big perfecta winnings on $2 wagers at Waterford Park. The dates and amounts of these winnings were as follows: Date
Amount
July 3, 1971
$ 1,486.80
July 9, 1971
2,684.40
August 16, 1971
1,170.80
August 31, 1971
2,466.20
September 28, 1971
1,401.20
October 2, 1971
4,840.00
October 7, 1971
632.40
Unknown
1,227.80
Total
$15,909.60
Petitioner signed certification forms for Waterford Park, Inc., acknowledging receipt of the above-indicated amounts. No wagering gains other than those for which petitioner signed were reported on petitioners' 1971 return. [2]
On their return for 1971, petitioners claimed a deduction for $15,909 labeled "Loss From Gambling Per Receipts." Petitioners have no record of Salvadore's racetrack wagering activities except for $10,153 in *314 losing tickets from Waterford Park racetrack for wagers placed in 1971, which tickets petitioners have in their possession. [3] Many of these tickets are in groups; that is, the majority of the identification numbers printed on tickets purchased at the same window for a particular race are in numerical sequence. [4] In a few instances, tickets for the same race were purchased from as many as 12 or 17 different windows. The vast majority of the tickets in petitioners' possession were clean and untorn. [5]
*315 In the statutory notice issued to petitioners, respondent determined that petitioners had $4,454 in gambling losses; accordingly, respondent disallowed the remaining $11,455 of the $15,909 claimed by petitioners. OPINION Section 165(d) authorizes a deduction for losses from wagering transactions but limited to the extent of the gains therefrom. On their joint Federal income tax return for 1971, petitioners reported wagering gains of $15,909 and claimed a deduction for wagering losses in an equal amount; respondent determined that only $4,454 of the claimed wagering losses were properly deductible by petitioners. [6] We must therefore decide whether petitioners have sufficiently substantiated the wagering losses incurred by petitioner Salvadore so as to entitle them to a deduction in excess of the amount allowed therefor by respondent. Petitioners bear the burden of proof as to the claimed wagering losses. *316 Stein v. Commissioner,322 F. 2d 78, 82 (5th Cir. 1963); Donovan v. Commissioner,359 F. 2d 64 (1st Cir. 1966), affg. a Memorandum Opinion of this Court; Rule 142, Tax Court Rules of Practice and Procedure. Petitioners rely primarily on the $10,153 of losing tickets as evidence of petitioner Salvadore's losses from racetrack wagering in 1971. While we agree with respondent that there is some doubt that all of these tickets were in fact purchased by or on behalf of petitioner, [7] we are satisfied that the tickets evidence a general pattern of betting activities which comports with petitioner's testimony in respect thereof. Petitioner testified, in essence, that he had wagered away all of his winnings and then some. [8] In spite of respondent's attempts to disparage the weight of petitioner's testimony, we found his testimony to be for the most part credible and sufficient to establish the fact that in 1971 petitioner was not the big winner at the racetrack that respondent's determination depicts him to have been. While we recognize that petitioner probably had smaller winnings which he did not include in income and that some of the losing tickets he presented *317 may not have been his, we are also convinced from Salvadore's testimony that he bought additional losing tickets which he did not keep, particularly earlier in the year 1971 before he hit his lucky streak. [9]
Notwithstanding the lack of other corroborative indicia of wagering activities, such as contemporaneous records or racetrack *318 programs, we conclude, on the basis of the losing tickets submitted and petitioner's testimony, that petitioners did in fact incur wagering losses in excess of the $4,454 allowed by respondent. We have done the best we can with the evidence and common sense we have to estimate what petitioner's total losses from wagering were in 1971, which we find to be $10,000. We, therefore, conclude that petitioners are entitled to deduct additional wagering losses, over those allowed by respondent, in the amount of $5,546. Herman Drews,25 T.C. 1354 (1956). [10] Compare Stein v. Commissioner,supra.[11] Petitioner seems sincere in his belief that he lost more at the racetracks in 1971 than he won and his living style tends to support his argument. However, petitioner failed to keep adequate records of his losses and even the losing tickets he presented will not support losses greater than we are allowing. Decision will be entered under Rule 155. *319 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise specified.↩
2. Petitioner testified that he did win additional, unreported bets which amount to "very little."↩
3. The fact that petitioners posses losing tickets in the amount of $10,153 was stipulated by the parties although respondent does not stipulate that these losing tickets are in fact records of petitioner's wagering activities. None of the actual tickets, other than those dated August 27, 1971, were submitted in evidence; instead, we have schedules prepared by respondent from the tickets turned over by petitioners. The schedules reflect the following information printed on the tickets: date, amount of wager, race, combination, window and ticket number. Additionally, the schedules indicate that a small number of tickets were purchased at a racetrack other than Waterford Park. ↩
4. The schedules (footnote 3, supra↩) indicate that occasionally one of the tickets is missing from the sequence. 5. The schedules prepared by respondent contain an occasional notation that a particular ticket is dirty or torn. Since we have only a small sample of actual tickets (August 27th) to compare with the schedules in order to determine the standard applied in describing the tickets and the reliability thereof, we are reluctant to accord much weight to the descriptions appearing on schedules.↩
6. The record does not indicate how respondent arrived at $4,454 as the amount of wagering losses allowable. We credit respondent's agent, however, for the time and effort spent in sorting, listing, and trying to analyze the tickets Salvadore made available to him.↩
7. Such "suspect" tickets are those which, for example, do not form part of an apparent sequence, indicate a window different than the (windows) from which the other tickets for that race were purchased, and are designated on respondent's schedules as torn or dirty. ↩
8. Petitioner's testimony constituted something of a converse net worth approach in that he testified that he had no savings and had borrowed funds in respect of which he was delinquent on some payments. Petitioner's characterization of his financial status is supported by the 1971 income tax return which reports no interest income but does instead indicate four items of interest expense in the amount of $676. ↩
9. Petitioner had relatively few losing tickets for the period January to July 1971, although he testified he attended the racetracks about three times a week during this period.↩
10. See also William H. Green,T.C.Memo. 1972-131; Stanley P. Legawiec,T.C.Memo. 1970-295↩. 11. Compare also Anthony J. Saitta,T.C.Memo. 1975-171↩.