AHMED SALEM and MERRY SALEM, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Salem v. Commissioner
Docket No. 2410-76.
United States Tax Court
T.C. Memo 1978-142; 1978 Tax Ct. Memo LEXIS 370; 37 T.C.M. (CCH) 614; T.C.M. (RIA) 780142; April 13, 1978, Filed *370 Petitioner reported income from wagering on horseraces and claimed a lesser amount as a deduction for wagering losses. Respondent disallowed all of the wagering losses claimed, Held, petitioner had substantial wagering losses during the taxable year which are deductible under sec. 165(a) and (d), I.R.C. 1954. Amount determined. Ahmed Salem, pro se. Deborah S. Hack, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency *371 in petitioners' income tax for the taxable year 2972 in the amount of $2,304.91. The only issue for decision is whether petitioners are entitled to a deduction for wagering losses under section 165, I.R.C. 1954. [1]
FINDINGS OF FACT Petitioners are husband and wife whose residence was Hazel Park, Mich., when the petition was filed. They file a joint income tax return for 1972 with the Cincinnati Service Center. Merry Salem is a petitioner only because she filed a joint return, and references herein to petitioner are to Ahmed Salem. During 1972 petitioner was employed as a factory worker for Ford Motor Company, earning $5,944.61 in wages. He was not a professional gambler, but he was a racetrack addict. Petitioner lived only 4 blocks from Hazel Park Raceway, and he frequently wagered at that and other local Detroit racetracks. He almost always placed gimmick bets, that is, daily doubles, perfectas, superfectas, and trifectas. Occasionally he also bought straight $2 tickets. On the joint 1972 income tax return, petitioner reported *372 $12,639.20 in racetrack winnings. He signed six Form 1099 information returns at Hazel Park Raceway acknowledging racetrack winnings. These winnings were as follows: Date
Amount
1. Aug. 6, 1972
$ 653.00
2. Aug. 14, 1972
3,686.00
3. Aug. 14, 1972
757.20
4. Aug. 19, 1972
1,293.60
5. Aug. 19, 1972
3,234.00
6. Unknown
1,288.60
$10,912.40
The other winnings represent petitioner's estimate of his additional winnings throughout the year. Against this wagering income for 1972, petitioner claimed a deduction of $12,500 for wagering losses. Petitioner's only record of his wagering activities for 1972 is $19,216 in losing tickets he had in his possession. Any losing tickets he kept he would throw in a cigar box in his dresser when he came home at night. These tickets are clean and untorn. A tabulation of the losing tickets reflects that most of the tickets bear identification numbers which are in sequence within a series. There are occasions when one or more tickets are missing from the sequential series but these are minimal compared to the total number of tickets presented. The different sequences on the tickets indicate that on eight occasions *373 a series of tickets on the same race were purchased either at four or five (one time at eight) different windows or at four or five different times. No pattern in time can be delineated from the tickets presented between petitioner's recorded winnings and the days on which the losing tickets were purchased. The 1972 joint income tax return reflects no income other than petitioner's wages and wagering income. Merry Salem also received social security payments for two children from a prior marriage. With these amounts, petitioners supported five children. Except for a modest home and automobile, they had no substantial assets in 1972. Indeed, to meet expenses in 1972, they were forced to borrow from petitioner's credit union and a finance company. In the statutory notice issued to petitioner, respondent disallowed all racetrack losses for 1972 on the ground such losses had not been adequately established. ULTIMATE FINDING OF FACT Petitioner incurred losses from wagering in the amount of $8,000 during 1972. OPINION Section 165(a) authorizes a deduction for uncompensated losses sustained during the taxable year, but section 165(d) allows losses from wagering transactions *374 only to the extent of gains from such transactions. For 1972, petitioner claimed a deduction for racetrack wagering losses of $12,500, which amount is less than petitioner's reported wagering gains of $12,639.90. Petitioner contends that he is entitled to the entire deduction claimed, emphasizing that in fact oetitioner sustained losses that exceeded his total gains. [2] Respondent on the other hand maintains that no allowable loss has been substantiated. To meet his burden of proving the wagering losses claimed, see Stein v. Commissioner,322 F. 2d 78 (5th Cir. 1963), and Rule 142(a), Tax Court Rules of Practice and Procedure, petitioner submitted $19,216 in losing racetrack tickets. He testified that he purchased these tickets during 1972. The parties stipulated to a tabulation of the losing tickets in petitioner's possession showing the dates purchased, *375 the racetrack where the tickets were purchased, the race, the number of tickets and the amount of each ticket, the serial number, and the type of bet. Most of the tickets are clean and untorn and most bear sequential serial numbers, which would indicate that they had probably been issued to the same purchaser at one time. In some instances, however, the serial numbers are not sequential, which suggests that they were not purchased at the same time. Respondent emphasizes the different sequences of tickets for a particular race, which means they were not purchased at one time. Respondent interprets these different sequences to mean the tickets were not purchased by the same person. Such an inference can be drawn but petitioner's explanation that at times after he had placed his first bet on a race he overheard conversations or had hunches which induced him to make additional bets on the same race is not unreasonable. In general, the types of tickets and their sequential serial numbers are consistent with the wagering pattern attested to by petitioner. While we recognize that petitioner probably had some small winnings he did not include in income [3] and some of the losing tickets *376 may not have been his (the large number of tickets and different sequences of tickets for some races raise our eyebrow), we found his testimony credible for the most part and sufficient to establish substantial losses at the racetrack in 1972. Moreover, we have no suggestions supported by evidence of how losing tickets came into petitioner's possession other than by legitimate purchase. Petitioner's testimony was corroborated to some extent by a racetrack companion, Herbert Jernukian, who had observed petitioner going to a betting window and having them punch tickets for "several minutes," indicating that petitioner purchased many tickets. Jernukian also testified that he had never seen petitioner pick up someone else's tickets off the ground. The losing tickets produced by petitioner are an uncertain corroboration of his testimony, [4] compare Stein v. Commissioner,supra, *377 but the only evidence before us was uncontradicted and we are convinced that petitioner had substantial losses from wagering in 1972. Admittedly, we cannot determine the amount of those losses with any degree of accuracy, but we are not required to disallow all of the claimed losses for that reason. Cohan v. Commissioner,39 F.2d 540 (1930). Judging petitioner's credibility by his demeanor and with common sense, we have found as a fact that petitioner sustained $8,000 in wagering losses in 1972. Accordingly, petitioners are entitled to deduct wagering losses of $8,000 under section 165(a) and (d). See Drews v. Commissioner,25 T.C. 1354 (1956). *378 Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise indicated.↩
2. Petitioner candidly testified that he probably had more winnings but that he may have bet and won a race and lost it all back the next race and not considered that a gain. He also testified that he did not claim all his losses so that he could show a wagering profit--to avoid income tax repercussions.↩
3. Petitioner did include in his wagering income $1,726.80 more than was recorded on the Form 1099's. Petitioner testified that this was his estimate of his additional winnings. Respondent did not determine that petitioner had wagering income in excess of that reported on his return.↩
4. As we have more of these racetrack loss cases wherein large numbers of clean, sequentially numbered tickets are presented as evidence, we get more suspicious of the sources of such evidence. See Myers v. Commissioner,T.C.Memo. 1976-191, and Taormina v. Commissioner,T.C.Memo. 1976-94. We assume the tickets would not be issued by the racetrack unless paid for. However, it is also possible that several friendly habitual bettors could pool their clean, uncashed losing tickets for use by the one who happens to receive large recorded winnings in a particular year. Nevertheless, we have no evidence that such was the case here and we cannot ascribe to this taxpayer such conduct on suspicion alone. This conclusion is also bolstered by the suspicion that very few nonprofessional but habitual racetrack gamblers end up with substantial net gains from wagering during the course of a year unless they win at least one pool considerably larger than any won by petitioner in 1972. Compare Saitta v. Commissioner,T.C.Memo. 1975-171↩.