EMANUEL SCOCCIMARRO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scoccimarro v. Commissioner
Docket No. 6064-77.
United States Tax Court
T.C. Memo 1979-455; 1979 Tax Ct. Memo LEXIS 69; 39 T.C.M. (CCH) 486; T.C.M. (RIA) 79455; November 19, 1979, Filed Emanuel Scoccimarro, pro se. Patrick Whalen, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies and additions to tax against petitioner in the following amounts: [1]Section 6653(a) Year
Deficiency
Addition
1972
$30,346.00
$7,587.00
1973
20,430.00
5,108.00
The sole issue is the extent to which petitioner sustained wagering losses deductible under section 165(d). FINDINGS OF FACT Petitioner *70 resided in the State of New Jersey at the time the petition was filed. He filed individual Federal income tax returns on a cash basis for 1972 and 1973. Copies of these returns were stipulated into evidence and are incorporated herein by reference. On his 1972 Federal income tax return petitioner reported gambling income from race tracks in the amount of $62,094 and offsetting losses of $108,099. On his 1973 return, he reported gambling income from race tracks of $46,601.00 and losses in a like amount.
Petitioner began going to race tracks in 1960. He usually frequented either Yonkers or Roosevelt Raceways since he was a fan of the trotters. Petitioner classifies himself as a "good handicapper" rather than a professional bettor. He usually went to the race track alone but he acquired quite a coterie of acquaintances there who knew him as "Scotty." During 1972 petitioner was quite ill and could not work. He spent his recuperative period going to the track almost every night. Petitioner claimed that his attendance tapered off in 1973 because he was less able than before to afford going to the track. Petitioner kept no record of his winnings and losses. In the course of *71 having his 1972 and 1973 income tax returns prepared, petitioner turned over to his accountant losing tickets and the Forms 1099 prepared and issued by the tracks reflecting his winnings. The wagering income figure reflected on his returns consisted solely of winnings reflected on the Forms 1099. Losses were calculated by adding up the losing tickets. Petitioner earned additional amounts at the race track, but he asserts that he has no way of determining that amount. Petitioner supported his family on his gambling earnings and modest net earnings from his air-conditioning business. He reported a net income from this business of $2,838.00 in 1972 and $2,300 in 1973. Petitioner also owned rental property which generated income but no cash flow since mortgage payments and expenses exceeded rentals. OPINION The only question presented for our determination is whether petitioner is entitled to a deduction for gambling losses allegedly sustained by him in 1972 and 1973. On his 1972 Federal income tax return petitioner reported gambling income from race tracks in the amount of $62,094.00 and offsetting losses of $108,099.00. On his 1973 return, petitioner reflected gambling income *72 from race tracks of $46.601.00 and offsetting losses in a like amount. Respondent disallowed the reported losses for lack of substantiation.
Section 165(d) provides that "losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Under Treas. Reg. § 1.165-10, such losses are limited to the extent of gains from such transactions during the taxable year. The burden of proof is on the petitioner to establish by competent evidence the amount of his gambling losses. Petitioner was the sole witness in his behalf. He kept no adequate records of his winnings or losses. Instead, he produced a large number of race track betting tickets, which he testified were losing tickets he purchased. The parties stipulated during the trial that the losing tickets presented for 1972 totaled $108,099.00 and the losing tickets presented for 1973 totaled $21,632.00. Petitioner claimed that he must have misplaced another $25,000 worlth of tickets for 1973. Parimutuel tickets such as were introduced in evidence in this case are of slight, if any, evidentiary weight where no corroboration is offered of petitioner's own statement *73 that each and every one was a losing ticket purchased by him. This is especially true where the tickets had not been analyzed to see whether the type of tickets and their sequential serial numbers are consistent with the wagering pattern attested to by petitioner. [2] (Although, as we pointed out in Salem v. Commissioner,T.C. Memo. 1978-142, n. 4, as the Court hears more of these race track loss cases where large numbers of clear, sequentially numbered tickets are presented as evidence, we get more suspicious of the sources of such evidence.) We have no way of knowing whether petitioner purchased these tickets or received them from acquaintances and friends at the track or acquired them by resorting to the time-honored technique of "stooping"; i.e., stooping down and picking up the discarded stubs of disheartened bettors.
*74 Petitioner's claim to losses totaling $108,099.00 in 1972 also casts doubt on whether the tickets he produced were indeed his. If full credence were to be given to petitioner's claimed loss in 1972, it appears that he must have won an additional $46,000 to make up the difference between reported gains and losses for that year, plus an additional amount, because he claims to have supported his family on the winnings. His other option would have been to liquidate assets to raise the money, but we discount that possibility because he would have been able to offer that as his source of funds during cross-examination. His explanation of the source of funds to account for this deficit is vague at best. Moreover, although we recognize as a practical matter that petitioner had race track losses, it is also clear that petitioner had additional race track winnings. The only winning bets that found their way onto the returns were those reflected on information returns (Forms 1099) provided by the race track to the Internal Revenue Service, with copies to the petitioner. Forms 1099 are only issued for certain races where winnings on one ticket total over $600.Logic dictates and petitioner *75 admitted that he had additional winnings although petitioner stated that he had no idea how much. In these circumstances we are unable to reach any basis for concluding that petitioner's unreported income did not equal or exceed his claimed losses. Donovan v. Commissioner,359 F. 2d 64 (1st Cir. 1966), affg. per curiam T.C. Memo. 1965-247. Since petitioner has established neither his true gambling income nor the relation of his losses thereto, no foundation has been laid for the application of the rule of Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930). Stein v. Commissioner,322 F. 2d 78, 83 (5th Cir. 1963). [3]
*76 We conclude that petitioner has failed to carry his burden of proof and that consequently no portion of the claimed losses may be allowed. Petitioner offered no evidence to contest the section 6651(a) delinquency penalty in the amount of 25 percent for each of the years 1972 and 1973. Thus, he has not established that his returns were delinquently filed due to reasonable cause and not due to willful neglect. The addition is sustained. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. Respondent usually thoroughly analyzes such tickets. That he did not in this case was due to petitioner's failure to bring in the tickets prior to the day before calendar call despite respondent's efforts to meet with petitioner at an earlier time and despite this Court's admonition to petitioner one year before the trial to meet with respondent.↩
3. See also Saitta v. Commissioner,T.C. Memo. 1975-171; Zooloomian v. Commissioner,T.C. Memo. 1969-107, affd. per curiam, 417 F. 2d 1337 (1st Cir. 1969). Contrast Greenfeld v. Commissioner,T.C. Memo. 1966-83; Salem v. Commissioner,T.C. Memo. 1978-142; Myers v. Commissioner,T.C. Memo. 1976-191; Taormina v. Commissioner,T.C. Memo. 1976-94; Gauthier v. Commissioner,T.C. Memo. 1976-166↩.