ANTHONY J. SAITTA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saitta v. Commissioner
Docket No. 3705-73.
United States Tax Court
T.C. Memo 1975-171; 1975 Tax Ct. Memo LEXIS 201; 34 T.C.M. (CCH) 753; T.C.M. (RIA) 750171; May 29, 1975, Filed Edward A. Garabedian, for the petitioner. Richard N. Weinstein, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies and additions to tax against petitioner in the following amounts: Sec. 6653(a) [1] Year
Deficiency
addition
1969
$74,626.00
$3,732.00
1970
34,129.00
1,707.00
The sole issue is the extent to which petitioner sustained wagering losses deductible *202 under section 165(d). [2]
FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Philadelphia, Pennsylvania, at the time the petition was filed. He filed individual Federal income tax returns on the cash basis for 1969 and 1970 with the district director of Internal Revenue, Philadelphia, Pennsylvania. On his 1969 return, he reported income from wages, salaries, etc. of $9,660; he also reported racetrack winnings of $112,249.50 and deducted racetrack losses in an equal amount. On his 1970 return, he reported income from wages, salaries, etc. of $9,401.00; he also reported racetrack winnings of $61,996.00 and again deducted the same amount for racetrack losses. Respondent disallowed the claimed losses in full for both years. Petitioner computed his 1969 winnings on the basis of Forms 1099 received from various racetracks in the Philadelphia area, showing winnings of "Big E" wagers totaling $112,249.50. *203 The entire amount of $61,996.00 reported in 1970 resulted from the purchase of a winning "Big E" ticket at a racetrack in Detroit, Michigan, which sum was also reported on Form 1099. During 1969 and 1970, petitioner attended and bet at a number of racetracks in the Philadelphia area. He went to the track as often as he could during the racing season. He took with him an average of at least $1,000 each night, and sometimes carried substantially larger sums, for betting purposes. Besides the "Big E" wins recorded on the Forms 1099, he made numerous bets on individual horses, daily doubles and exactas, some of which he won. He kept no record of amounts he won or lost. If he made a winning bet, he would use all or some of the proceeds to make subsequent wagers. Petitioner also gambled at poker. None of his winnings at poker or at the racetrack (other than those reported on Forms 1099) were reported on his returns. OPINION Petitioner was the sole witness in his behalf. He produced a large number of racetrack betting tickets, which he testified were losing tickets purchased by him and which in aggregate amount exeeded, for each year, the amount of winnings reported on his returns. *204 He offered no corroborating evidence by way of records or testimony of others who were with him at the tracks nor did he resort to other indirect methods of proof available to him such as net worth, bank deposits or other evidence of financial circumstances.[3] Respondent confined himself to a direct attack on petitioner's testimony through the use of a witness who testified to the effect that the petitioner could not have made all the bets which were represented by the losing tickets. Thus, our decision must rest on our determination of whether the petitioner's testimony should be accepted and held to be sufficient to carry his burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.We hold that it should not. Some tickets bear serial numbers and each is stamped or printed to indicate the date, type and amount of the bet, as well as the racetrack and particular betting window where it was purchased. Many losing tickets are similar in *205 all respects, except that they bear nonconsecutive serial numbers. It would appear that, in order to obtain such tickets, petitioner would have had to stand in line at the same window once for each series purchased. Petitioner offered no explanation for this unusual pattern, which occurs on many dates. Other groups of tickets show bets made for a particular race, necessarily during a short span of time, at widely separated windows. The inherent difficulty of adequate recordkeeping with respect to gambling losses, particularly racetrack losses, cannot be held to reduce the burden of proof borne by petitioner. Stein v. Commissioner,322 F.2d 78 (5th Cir. 1963); Plisco v. United States,306 F.2d 784 (D.C. Cir. 1962); section 6001. [4] Parimutuel tickets such as were introduced in evidence in this case are of slight, if any, evidentiary weight where no corroboration is offered of petitioner's own statement that each and every one was a losing ticket purchased by him. This is particularly true when, as here, an examination of the tickets casts considerable doubt on petitioner's testimony. It is not unlikely that many of the tickets submitted in evidence *206 were purchased by others, such as petitioner's friends and acquaintances at the tracks, and there is no basis in the record herein for concluding that such purchases were made on petitioner's behalf. Although some of the tickets may in fact represent petitioner's losing bets, his testimony provides no clues to identification of particular wagers, or any particular portion of the whole, which should be offset against his winnings in calculating his taxable income. Petitioner admitted to having wagering income in addition to the sums reported on his returns, but did not testify credibly to the maximum amount of such gross winnings. It is evident from the record that he habitually made bets from his winnings. We are unable to reach any basis for concluding that his unreported income did not equal or exceed the claimed losses.[5]Donovan v. Commissioner,359 F.2d 64 (1st Cir. 1966), affg. per curiam T.C. Memo. 1965-247; see Corum's Estate v. Commissioner,260 F.2d 551 (6th Cir. 1958), *207 affg. per curiam on this issue T.C. Memo. 1957-111. Since petitioner has not established either his true gambling income or the relation of his losses thereto, no foundation has been laid for the application of the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Stein v. Commissioner,supra,322 F.2d at 83; Plisco v. United States,supra.[6]
We conclude that petitioner has failed to carry his burden of proof and that consequently no portion of the claimed losses may be allowed. Petitioner offered no evidence which would separately contest the imposition of the *208 addition to tax under section 6653(a). It is established that the failure to report, and maintain adequate records of, gambling income and losses is evidence of negligence or intentional disregard of rules and regulations. Marcello v. Commissioner,380 F.2d 509, 511 (5th Cir. 1967), affg. T.C. Memo. 1964-304. [7] The addition is sustained.
Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. SEC. 165(d). Wagering Losses.--Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.↩
3. Cf. William H. Green,T.C. Memo. 1972-131; Oswald Jacoby,T.C. Memo. 1970-244; Aaron Greenfeld,T.C. Memo. 1966-83↩.
4. See also Stanley P. Legawiec,T.C. Memo. 1970-295; J. O. Popwell,T.C. Memo. 1958-62. Cf. B. H. Bickers,T.C. Memo. 1960-83↩.
5. As another example of the inadequacy of petitioner's proof, we note that the only winnings which were reported for 1970 were from a single "Big E" ticket purchased on September 18. We find it hard to believe that petitioner had no winnings to offset the losing tickets which he submitted for the period January 1 to September 18 of the same year. ↩
6. See also Giovanni P. Altobelli,T.C. Memo. 1975-53; Stanley P. Legawiec,supra, note 4. Contrast Aaron Greenfeld,supra,↩ note 3.
7. See Carol B. Manzo,T.C. Memo. 1972-142; Oswald Jacoby,supra,↩ note 3.