OREN F. POTITO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent OREN F. POTITO and HELEN M. POTITO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Potito v. Commissioner
Docket No. 5304-68, 5305-68.
United States Tax Court
T.C. Memo 1975-187; 1975 Tax Ct. Memo LEXIS 185; 34 T.C.M. (CCH) 804; T.C.M. (RIA) 750187; June 16, 1975, Filed *185 William R. Frazier, for the petitioners. Robert J. Shilliday, Jr., for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Addition
to Tax
Taxable
Income Tax
Sec. 6653(a) Petitioner
Docket No.
Year
Deficiency
I.R.C. 1954
Oren F. Potito
5304-68
1963
$2,156.18
$107.81
Oren F. Potito
5304-68
1964
2,170.19
108.51
Oren F. Potito
& Helen M. Potito
5305-68
1965
574.03
28.70 The cases were consolidated for trial, briefs and opinion. The following issues are presented for decision: 1. Whether petitioners omitted from their taxable income for the years 1963, 1964 and 1965, $1,100.68, $2,702.65, and $1,632.40, respectively, deposited in a checking account maintained by the Church of Jesus Christ-Christian and derived from amounts received for publication and distribution of the National Christian News newspaper and from donations by those attending church meetings; 2. Whether petitioner is taxable in the year 1963 on $2,920 in deposits made to a checking *186 account maintained in the name of National Engineering Company; 3. Whether petitioner is taxable on $1,000 allegedly received for the purchase of silver in the taxable year 1963; 4. Whether a boat, motor and trailer received by petitioner in 1964 are income to him in that year at a value of $2,500; 5. Whether petitioners are entitled to part or all of the business expenses disallowed for the years 1963, 1964 and 1965 in the amount of $2,848.08, $2,502.45 and $916.10, respectively; 6. Whether petitioners are entitled to depreciation deductions of $1,124.66, $1,749.66 and $1,749.66 claimed on Federal income tax returns for the years 1963, 1964 and 1965, respectively; and 7. Whether petitioners are liable for the 5 percent negligence penalty prescribed by section 6653(a), Internal Revenue Code of 1954[1] for each of the years in issue. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. At the time the petitions *187 were filed, Oren F. Potito (hereinafter referred to as petitioner) and Helen M. Potito were husband and wife and resided in Ocala, Florida. Prior to his marriage to Helen in 1965, petitioner resided in St. Petersburg, Florida. Petitioner filed individual income tax returns for 1963 and 1964, and petitioners filed a joint return for 1965, all with the District Director of Internal Revenue, Jacksonville, Florida. Petitioner was the sole proprietor of Continental Engineering which had no permanent employees. Continental Engineering derived its income from servicing television sets and air conditioners owned by various motels located on beaches in the vicinity of St. Petersburg, Florida. Continental Engineering received a minor portion of its gross receipts from the sale, installation, and servicing of air conditioners, television sets, refrigerators, electronic equipment and appliances. Deposits to Continental Engineering's bank account at the St. Petersburg Bank & Trust Company were as follows: 1963
1964
1965
$943.00
$1,917.00
$3,742.23 Petitioner did not deposit all of Continental Engineering's gross receipts in its bank account. His only record of Continental *188 Engineering's gross receipts was the Continental Engineering bank account statements. Petitioner did not keep accurate records of his income as it was received. On his 1963, 1964 and 1965 income tax returns, petitioner reported gross receipts from Continental Engineering business of $7,320 for 1963, $8,730 for 1964, and $7,300 for 1965. The business deductions which petitioner itemized on his 1963, 1964 and 1965 income tax returns were attributable to Continental Engineering and not any other enterprise. The printing expense deducted each year was an expense of Continental Engineering and not the church. The depreciation deductions taken by petitioner on his 1963, 1964 and 1965 income tax returns were based on costs and useful lives of various business assets used in this Continental Engineering business. The Mercedes Benz automobile which was reported as a depreciable asset in each year was used for Continental Engineering service calls, personal transportation, and occasionally for speaking engagements. Petitioners' income tax returns for the taxable years 1963, 1964 and 1965 were prepared from written summaries of their records which were provided the return preparer in each *189 of those years. The information contained in the written summaries was properly transferred to the returns by the return preparer. The gross receipts which petitioner entered on these written summaries were solely Continental Engineering gross receipts. The return preparer described the gross receipts as Continental Engineering gross receipts because petitioner had told her that his only source of income was from Continental Engineering. Petitioners' income tax returns for 1963, 1964 and 1965 do not report any income from church or other income-producing activities. Petitioners' gross receipts from Continental Engineering in 1963, 1964 and 1965 were $7,320, $8,730 and $7,300, respectively. Petitioner reported a net profit of $328.74 and $817.90 on his 1963 and 1964 income tax returns, and petitioners reported a loss of $297.66 on their 1965 return. On their income tax returns for the taxable years 1963, 1964 and 1965, petitioners claimed depreciation deductions of $1,124.66, $1,749.66 and $1,749.66, respectively. Petitioners did not pay any Federal income taxes for the taxable years 1963, 1964 and 1965. Petitioner, however, paid $44.17 in self-employment tax for the taxable year *190 1964. Petitioner reported that his disposable income (depreciation plus net profit minus taxes paid) in 1963, 1964 and 1965 was $1,453.40, $2,523.39 and $1,452, respectively. On his income tax return for the taxable year 1964, petitioner claimed to have incurred $910 in doctor, hospital, dentist and drug expenses; $120 in interest on automobile loan; and $76 in taxes. Petitioner's disposable income remaining after these expenses for 1964 was $1,417.39. Petitioners incurred and paid medical expenses of $44 in 1963 and $213.25 in 1965. Petitioner purchased a Mercedes Benz automobile in 1962 for $6,700. Petitioner financed $6,500 of this amount at a bank but the terms of payment are unknown. In 1963, petitioner purchased a microfilm camera and viewer for $275, a vacuum cleaner for $249.50, a tape recorder for $395, tear gas pens for $60, and several groups of books for $355.06. In addition, petitioner purchased a 1964 Volkswagen bus in 1963 for $2,500. The record does not disclose the terms of payment. Petitioner purchased a 1963 red Chrysler convertible in 1963 for an undisclosed amount. Petitioner paid $101 for a patent, $280 for a linotype machine, $100 for a generator, $95 *191 for a press and $132.82 for radios in 1964. In 1965, petitioners paid $113.25 for radio equipment, $577.48 for furniture, $55.62 for a boat top and $35 for his wedding. Petitioner leased a home in Ocala, Florida, in 1965 paying $100 per month for six months as rent for his personal living quarters. Petitioner lived comfortably during 1963, 1964 and 1965 eating at good restaurants and dressing well, etc. In 1963, 1964 and 1965, petitioner expended a substantial amount of funds on personal living expenses including mower repairs, veterinary expenses, books and magazines, insurance, utilities, garbage collection, furniture, jeep repairs, repairs on other personal items, food, clothing, restaurant bills, and other miscellaneous living expenses. Petitioners' expenditures substantially exceeded reported disposable income in 1963, 1964 and 1965. Petitioners received income in taxable years 1963, 1964 and 1965 which was not reported on their income tax returns. After petitioner was designated a minister by the president of the Church of Jesus Christ-Christian (church), an organization chartered in California, he was allowed to establish his own church in St. Petersburg, Florida. Petitioner's *192 church was a separate entity from the California organization. It was not recognized by the St. Petersburg Council of Churches. A minister of the church was required to have knowledge of the Bible and fully understand church doctrine. The followers of the church believed that the real biblical Israelites were the Anglo-Saxon race. During the years in issue, petitioner spoke at several churches and other establishments which were rented by his church. Petitioner held three meetings per week for the members of his church with attendance at each meeting varying from 15 to 550 people. Petitioner received income from his church members in the form of cash payments, food, clothes and reimbursement of his expenses. Petitioner exercised exclusive control over all cash receipts. He did not formally designate a portion of the cash receipts as salary, but spent the money on himself, for church or other activities at his sole discretion. Petitioner had no records of cash receipts from church members other than the bank statements of the church account at the St. Petersburg Bank & Trust Company, St. Petersburg, Florida. The deposits into the church account totaled $1,100.68 in 1963; $2,702.65 *193 in 1964; and $1,632.40 in 1965. Petitioner had sole authority to withdraw funds from this bank account. Petitioner was publisher, editor and distributor of the National Christian News (the newspaper) which was a church-related, income-producing activity. During the years in issue, petitioner normally had 5,000 copies of the newspaper printed each month and paid for the printing by drawing checks on the church account. The yearly subscription cost for a single copy of the newspaper was $2 in 1963, 1964 and 1965. The newspaper could also be purchased in 100 paper lots for $3 for distribution aimed at increasing circulation. Some of the funds deposited in the church account were derived from news subscriptions. Petitioner had no records of receipts from newspaper sales other than the church bank statements. The newspaper was partially distributed through the mails at bulk rates. The postal bulk rate was 2-5/8 cents in 1963; 2-3/4 cents in 1964; and 2-7/8 cents in 1965. Expenditures for postage stamps were as follows: 1963
$406.73
1964
738.73
1965
451.58 The average number of subscribers to the newspaper in 1963, 1964 and 1965 was 1,291, 1,368 and 2,141, respectively. *194 Petitioners' income from the newspaper subscriptions in 1963, 1964 and 1965 was $2,582, $2,736 and $4,282, respectively. Petitioner omitted from his income tax returns for taxable years 1963, 1964 and 1965 at least $1,100.68, $2,702.65 and $1,632.40, respectively, which were the funds deposited in the church bank account. In response to representations that he could develop a workable automobile cooler which would revolutionize automobile air conditioning and yield huge profits, in 1963 a Mr. and Mrs. Whitman placed $2,920 at petitioner's disposal in a bank account in the First Park Bank, Pinellas Park, Florida. Petitioner was to organize a corporation called National Engineering as the business vehicle through which the coolers would be developed, manufactured and marketed. The corporation was never organized. Although these funds were to be used in developing the cooler, petitioner was secretive about expenditures from the account resulting in the Whitmans' decision to close the account in 1964 or 1965 and withdraw the $1,300 balance which remained. One thousand six hundred and twenty dollars of the $2,920 made available to develop the cooler was unaccounted for and is taxable *195 to petitioner in 1963. In May 1963, petitioner received $1,000 from the Whitmans to purchase silver for the Whitmans who never received the silver. The $1,000 which petitioner received from the Whitmans in 1963 for silver constitutes taxable income to him in 1963. Petitioner received a new 19-foot Seabreeze boat, 80-horsepower Westbend motor and boat trailer in 1964 from Mr. and Mrs. Ernest Stevens in payment for his services as their minister which petitioner did not include in his income for 1964. The boat, motor and trailer are includible in petitioner's taxable income in the year 1964 at a value of $2,500. For the taxable year 1963, the Commissioner allowed petitioner the following business expenses: Rent
$ 375.00
Telephone
180.15
Repairs
110.25
Transportation
137.45
Travel
110.00
Storage and Equipment Rental
16.20
Parts and Equipment for Resale
379.62
Advertising
56.50
Labor
205.00
Post Office Box Rent
9.00
Postage
406.73
Printing and Supplies
916.76
Subscriptions
8.00
Other
107.86
TOTAL
$3,018.52 On his 1963 income tax return, petitioner claimed the following business expenses: Materials and Supplies
$1,944.00
Depreciation
1,124.66
Other Expenses: Phone
$1,240.00
Licenses
65.00
Gas & Oil
603.00
Insurance
90.00
Office Expense
600.00
Printing
50.00
Dues
13.00
Entertainment &
Promotion
52.00
Car Repairs
416.10
Tax Return Expense
20.00
Tolls
100.00
Travel Expense
500.00
Tool Rental
25.00
Laundry & Uniforms
114.00
Auto & Trailer
34.50
3,922.60
TOTAL
$6,991.26
*196 At trial, petitioner contended that his business records proved he was entitled to the following business expenses for 1963: Rent
$ 803.00
Repairs
606.86
Telephone
235.30
Labor
178.05
Supplies
1,195.32
Printing
855.96
Travel
294.92
TOTAL
$4,169.41 Petitioner failed to show he was entitled to business expenses for the taxable year 1963 in excess of those allowed by the Commissioner. For taxable year 1964, the Commissioner allowed petitioner the following business expenses: Rent
$ 250.00
Telephone
240.11
Repairs
143.77
Transportation
236.96
Storage and Equipment Rental
49.55
Parts and Equipment for Resale
284.33
Advertising
95.08
Labor
148.00
Post Office Box Rent
18.00
Postage
738.73
Printing and Supplies
1,177.49
Travel
122.31
Other
155.66
TOTAL
$3,659.99 On his 1964 income tax return, petitioner claimed the following business expenses: Cost of Goods Sold
$2,010.00
Depreciation
1,749.66
Repairs & Maintenance
530.00
Insurance
110.00
Tax Return Preparation
20.00
Interest
172.44
Other Expenses: Telephone
$1,380.00
Licenses
80.00
Gas & Oil
640.00
Printing
60.00
Tolls
100.00
Travel Expenses
800.00
Laundry & Uniforms
150.00
Auto Tags
45.00
Entertainment &
Promotion
52.00
Dues
13.00
3,320.00
TOTAL
$7,912.10
*197 Petitioner contended at trial that his business records proved he was entitled to the following business expenses for 1964: Printing
$ 1,279.03
Telephone
116.40
Travel
48.85
Postage
78.84
Licenses
113.96
Supplies
1,750.99
Repairs
882.05
Rent
1,574.16
TOTAL
$5,844.28 Petitioner failed to prove he was entitled to business expenses for the taxable year 1964 in excess of those allowed by the Commissioner. For taxable year 1965, the Commissioner allowed petitioners the following business expenses: Rent
$1,325.00
Telephone & Telegraph
307.30
Repairs
166.22
Transportation
204.43
Travel
215.00
Storage & Equipment Rental
67.95
Parts and Equipment for Resales
744.67
Advertising
128.03
Dues
5.00
Labor
103.25
Taxes and Licenses
113.55
Post Office Box Rent
3.00
Postage
451.58
Printing & Supplies
1,069.85
Subscriptions
3.00
Other
24.07
TOTAL
$4,931.90 On their 1965 income tax return, petitioners claimed the following business expenses: Cost of Goods Sold
$2,300.00
Depreciation
1,749.66
Rent
200.00
Tax Return Preparation
20.00
Other Expenses: Phone
$ 740.00
Gas & Oil
550.00
Printing
80.00
Tolls
50.00
Travel Expense
1,500.00
Laundry & Uniforms
100.00
Auto Tags
45.00
Entertainment &
Promotion
250.00
Dues
13.00
3,328.00
Total
$7,597.66
*198 Petitioners contended at trial that their business records proved they were entitled to the following business expenses for 1965: Supplies
$2,363.27
Travel
90.42
Telephone
553.06
Postage
352.59
Repairs
31.42
Labor
250.68
Rent
1,650.00
Printing
1,178.67
TOTAL
$6,470.11 Petitioners failed to show they were entitled to business expenses for the taxable year 1965 in excess of those allowed by the Commissioner. The expenses allowed in the statutory notices adequately recognized the expenses petitioners were able to prove. Petitioners understated the taxable income shown on the 1963, 1964 and 1965 income tax returns by overstating business expenses as follows: 1963
1964
1965
Expenses claimed
less depreciation
$5,866.60
$6,162.44
$5,848.00
Expenses allowed
3,018.52
3,659.99
4,931.90
Increase in Income
$2,848.08
$2,502.45
$ 916.10
The description of each of petitioners' depreciation deductions (based on the straight line method of computing depreciation) contained in the returns for the taxable years 1963, 1964 and 1965 is as follows: 1963
Year
Useful
Depreciation Asset
Cost
Acquired
Life
Deduction
1961 Mercedes Benz
$5,387.40
1962
4
$1,096.85
Less: 10% personal
109.69
$ 987.16
Office Furniture
125.00
1957
10
12.50
Office Furniture &
Equipment
193.00
1959
10
19.30
Shop Tools
162.00
1961
10
16.20
Tape Recorders (2)
500.00
1962
10
50.00
Tape Recorder
395.00
1963
10
39.50
TOTAL
$1,124.66
1964 and 1965
Year
Useful
Depreciation
Asset
Cost
Acquired
Life
Deduction
1961 Mercedes Benz
$5,387.40 *
1962
4
$1,096.85
Less: 10% personal
109.69
$ 987.16
Office Furniture
125.00
1957
10
12.50
Office Furniture &
Equipment
193.00
1959
10
19.30
Shop Tools
162.00
1961
10
16.20
Tape Recorders (2)
500.00
1962
10
50.00
Tape Recorder
395.00
1963
10
39.50
1964 Volks Truck
2,500.00
1963
4
625.00
TOTAL
$1,749.66
*199 Petitioner purchased a 1961 Mercedes Benz 300 automobile on June 29, 1962, for a total purchase price of $6,700. Petitioners are not entitled to any depreciation deduction for the taxable years 1963, 1964 and 1965. Petitioners' records are disorganized, incomprehensible, and do not support their income tax returns for taxable years 1963, 1964 and 1965. Petitioners' omissions of income from the returns for the taxable years 1963, 1964 and 1965 and overstatement of expenses on the returns for the taxable years 1963, 1964 and 1965 were due to negligence or intentional disregard of rules and regulations. The 5 percent negligence penalty is applicable to petitioners' underpayments of tax for taxable years 1963, 1964 and 1965. OPINION The issues are factual and petitioners must prove the Commissioner's determination erroneous. Rule 142, Tax Court Rules of Practice and Procedure.Petitioner, Oren F. Potito, relies heavily upon his own testimony which lacks credibility because of numerous evasive statements, misstatements and statements which conflict with testimony of disinterested witnesses. Accordingly, except as noted below, we sustain the *200 Commissioner's determination. See Stein v. Commissioner,322 F.2d 78 (5th Cir. 1963), affg. a Memorandum Opinion of this Court. Issue 1. Deposits to the Account of the Church
The Commissioner determined that petitioners omitted from taxable income for the years 1963, 1964 and 1965 the sums of $1,100.68, $2,702.65 and $1,632.40, respectively, deposited in a checking account maintained by the Church of Jesus Christ-Christian. Conceding that the deposits were includible in income, petitioner contends that such deposits were included in gross receipts reported in each of the years in issue and that if sustained, the Commissioner's determination would result in taxing this income twice. After examining petitioners' returns and listening to the testimony of the return preparer, we are convinced that during each of the years in question, the income reported was derived solely from Continental Engineering and no other source. And, since petitioner failed to adequately explain expenditures greatly in excess of reported income, we are satisfied that he received unreported income taxable in the years 1963, 1964 and 1965. Accordingly, we hold for respondent on this issue. *201 Issue 2. $2,920 Deposited to the Account of National Engineering Co.
In response to representations that he could develop an automobile air conditioner which would yield huge profits, Mr. and Mrs. Whitman, in 1963, placed $2,920 at petitioner's disposal in a checking account at a local bank. Petitioner was to organize a corporation called National Engineering to develop, manufacture, and market the air conditioner. The corporation was never organized and, therefore, the Whitmans never received any National Engineering stock. Although the funds were to be used in developing the air conditioner, petitioner was secretive about expenditures from the account resulting in the Whitmans' decision to close the account in 1964 or 1965 and withdraw the $1,300 balance which remained. The Commissioner determined that the entire $2,920 deposited for National Engineering constituted income to petitioner in 1963. The evidence does not support respondent's contention that petitioner enjoyed exclusive control of the funds in issue or that disbursements from the account were made without the knowledge or approval of the Whitmans. However, petitioner refused to account to the Whitmans and failed *202 to explain to this Court how much of these funds was paid to whom, when and for what purpose. Accordingly, petitioner's uncorroborated testimony that none of the expended funds was appropriated to his own use and benefit and that all such funds were properly expended for development of the auto air conditioner is insufficient to rebut the presumptive correctness of respondent's determination. Accordingly, we hold that $1,620 of the $2,920 made available to petitioner to develop the air conditioner was properly taxable to petitioner in 1963. Issue 3. Purchase of Silver
In May 1963, petitioner received $1,000 from the Whitmans to purchase silver for the Whitmans who never received it. Mrs. Whitman's testimony convinces us that petitioner misappropriated these funds for his own benefit and was properly taxable thereon in 1963. Issue 4. The Boat, Motor and Trailer
In 1964, petitioner received a boat, motor and trailer which the Commissioner determined were includible in his income for the year 1964 at a value of $2,500. Petitioner did not offer the testimony of the persons who allegedly made the gifts. Petitioner's uncorroborated testimony that these items were gifts from *203 members of his congregation is insufficient to overcome the Commissioner's determination which is fully sustained in view of petitioner's failure to present any evidence of the value of the boat, motor or trailer. Wichita Terminal Elevator Co.,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Issue 5. Business Expenses
For the taxable years 1963, 1964 and 1965, the Commissioner allowed petitioners business expense deductions of $3,018.52, $3,659.99 and $4,931.90, respectively. Petitioners contend their business records show they were entitled to deduct business expenses of $4,169.41, $5,844,28 and $6,470.11 in the years 1963, 1964 and 1965, respectively. Petitioners' records contained duplicate checks and vouchers in the same or different categories of expenses, documents reflecting personal or capital expenditures, and were generally incomprehensible. Having failed to prove they were entitled to business expenses in each of the years in issue in excess of those allowed by the Commissioner, petitioners cannot prevail on this issue. Issue 6. Depreciation Deductions
The Commissioner disallowed all depreciation claimed by petitioners *204 on their returns for 1963, 1964 and 1965. Petitioners argue that the record shows they are entitled to those deductions and that the Commissioner's determination was arbitrary and erroneous. We disagree. Petitioner's uncorroborated conclusive statement that the items shown on the returns for the years in issue are correct does not establish the right to the depreciation deductions in issue. Except for one item, petitioners failed to prove the cost of the assets in question. Moreover, without exception, petitioners failed to establish the extent of personal use, the useful life and salvage value of each of the assets involved. Accordingly, respondent's determination was not arbitrary or erroneous and must be sustained. Issue 7. Negligence Penalty
Petitioners' system of record keeping, based on bank records only, requires all business receipts to be deposited in the bank. Yet, petitioners failed to deposit all income earned during each of the years in question. Moreover, petitioners' records are generally unintelligible, fail to support the income reported and expenses deducted, and resulted in substantial understatements of taxable income for each of the years in issue. Having *205 failed to satisfactorily explain these shortcomings, petitioners are subject to the negligence penalty imposed by section 6653(a) for the taxable years 1963, 1964 and 1965. See Marcello v. Commissioner,380 F.2d 499 (5th Cir. 1967), affg. a Memorandum Opinion of this Court, cert. denied 389 U.S. 1044 (1968). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to sections of the Internal Revenue Code of 1954 in effect during the taxable years in issue, unless otherwise noted.↩
*. $374.00 Salvage Value deducted↩