T.C. Memo. 2001-161

UNITED STATES TAX COURT

COLIN KELLY AND SHARON K. KAUFMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12363-99.                          Filed July 2, 2001.

<u>Colin Kelly Kaufman</u>, for petitioners.

<u>John D. Faucher</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies, additions
to tax, and a penalty as follows:

|  |  |  | Additions to Tax/Penalty | | |
| Petitioner | Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) | Sec. 6662(a) |
| Colin Kelly Kaufman | 1992 | $25,084 | $5,056 | $857 | – |
| Sharon K. Kaufman | 1992 | 20,486 | 3,907 | 658 | – |
| Colin Kelly & Sharon K. Kaufman | 1993 | 24,310 | – | – | $4,862 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issue for decision is whether certain legal fees received by petitioners were taxable when received or were unearned "retainers" during the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Corpus Christi, Texas, at the time that they filed their petition. During 1992 and 1993, petitioner Colin Kelly Kaufman (petitioner) practiced bankruptcy law in Corpus Christi. Petitioner Sharon K. Kaufman worked as the office supervisor in petitioner's law practice.

During the years in issue, petitioner received payments from clients for work that had been performed and "retainers" from clients for work to be performed in the future. Petitioner did not enter into written agreements with the clients explaining the terms under which the retainers were received and applied. Petitioners did not maintain any books or records that indicated which payments received by petitioners were for fees earned and which payments received were retainers or when retainers were earned. Some retainers were deposited into petitioners' trust account, and amounts from the trust account were later

transferred to petitioners' business or personal accounts. For example, petitioners transferred $5,000 relating to Del Anderson from their trust account to their personal joint account in October 1992, and they transferred $10,000 relating to Allan Potter from their trust account by check payable to petitioner in November 1992. In 1993, petitioners transferred a total of $40,000 relating to Allan Potter from their trust account to their business account.

Neither petitioner filed a tax return for 1992 until November 30, 2000, after the petition in this case was filed and shortly prior to trial. Petitioners filed a timely return for 1993 and filed an amended 1993 return on November 30, 2000. In June 1996, a revenue agent commenced an audit of petitioners' income tax liability for 1992 and 1993. The revenue agent reconstructed petitioners' income after meeting with petitioners and their representative. The revenue agent did not include deposits into the trust account as income in her reconstruction. She did, however, include transfers from the trust account into petitioners' business or personal accounts. The items that were included as transfers were in many instances identified on written lists of income items provided to the revenue agent by petitioners or their representative. In determining the amount of unreported income, the revenue agent deducted the amounts that

she could identify as reported by petitioners for 1992 (on their belated return) and for 1993.

OPINION

Petitioners presented no evidence that they are entitled to deductions beyond those allowed by respondent. Petitioners stipulated that they do not contest any Schedule C, Profit or Loss From Business, expenses not mentioned in the stipulation. Petitioners contend that the amount of the penalty and additions to tax determined by respondent should be reduced in accordance with their claims of reduction in their taxable income. Petitioners presented neither evidence nor argument about the basis for imposition of the penalty and additions to tax. Thus, they have conceded these issues. See, e.g., Money v. Commissioner, 89 T.C. 46, 48 (1987). The issue remaining for decision is whether certain legal fees received by petitioners were taxable when received or were unearned "retainers" during the years in issue.

Petitioners contend that certain rounded dollar amounts included in respondent's reconstruction of their income for 1992 and 1993 were unearned retainers rather than taxable income during the years in issue. The only evidence in support of petitioners' contention is petitioner's testimony. We need not accept uncontroverted testimony at face value if it is improbable, unreasonable, or questionable, see, e.g., Lovell &

Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo. 1970-335; Stein v. Commissioner, 322 F.2d 78, 82 (5th Cir. 1963), affg. T.C. Memo. 1962-19, or if the totality of the evidence conveys a different impression, see Diamond Bros. Co. v. Commissioner, 322 F.2d 725, 731 (3d Cir. 1963), affg. T.C. Memo. 1962-132.

Petitioners argue that respondent erroneously included funds deposited into their trust account as income during the years in issue. The revenue agent testified in detail that only transfers from the trust account and other deposits into petitioners' business or personal accounts were included in respondent's reconstruction. We accept this testimony, which is not controverted in any way.

Petitioners concede that they did not maintain books that would distinguish between earned fees and unearned retainers. They belatedly claim that the schedules provided to the revenue agent during the audit were lists of all receipts, rather than lists of income received. They argue that the requirement of Texas law that they maintain retainers in a separate trust account somehow excuses their failure to keep the amounts segregated or to provide written agreements to their clients. Their arguments assume, contrary to the evidence, that identified amounts were shown to be clients' funds.

Petitioner's testimony was that he thought it "probable" that the rounded dollar amounts were not income during the years in which they were received and transferred from the trust account to another account.  In petitioners' brief, they argue:

> b.  Large Rounded Off Numbers.  Mr. Kaufman has always contended that bills for work and expenses already done typically total up to odd dollars and cents; and that large rounded off amounts (such as $40,000) are much more likely to be retainers for future work than they are to be bills for work and expenses already done.  Paragraph 6 of the petitioners' pre-trial memorandum.  And common sense tells you that's true; and that the petitioners' position is inherently probable.  And the reason why you would get three checks from the company to make up the $40,000 amount is that different investors and reinsurers are responsible for different levels of risk at many of these companies, so that different (typically reinsurer) authorizations are required to get money in excess of a certain level (say, $20,000).

Petitioners further show their tendency to rely on speculative afterthought in the following passage from their brief:

> 51.  The $50,000 Heggen Mistake.  The night before trial, Mr. Kaufman discovered he was been [sic] mistaken about a $50,000 Heggen item in 1992.  * * * So he admitted that to the Court.  But it now occurs to the petitioners, after further thought, that this mistake did not require the $50,000 to be INCOME. Getting it and putting it into the TRUST account would mean it still was NOT INCOME, though received. Respondent had a burden to show that it was EARNED that year as well as received into the trust account.

Petitioner's uncorroborated testimony is patently unreliable.  We are not persuaded by petitioner's belated rationalizations and attempts to exclude from taxable income amounts that he received

during the years in issue without any evidence of limitation on their use. We are not persuaded by petitioner's belated attempts to disavow the lists of income items provided to respondent's agent during the audit of petitioners' returns for 1992 and 1993. Petitioners' inability to prove their contentions is undoubtedly of their own making.

Petitioners are required to maintain records from which their tax liability may be ascertained; in the absence of adequate books and records, respondent may use a reasonable method, such as a bank deposits analysis, to reconstruct petitioners' income. See Estate of Mason v. Commissioner, 64 T.C. 651, 656, 658-659 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Respondent did so in this case. Contrary to petitioners' contention, respondent does not have to show that legal fees received during a taxable year were "earned" during the same year. See Miller v. Commissioner, T.C. Memo. 1989-128, affd. without published opinion 909 F.2d 509 (8th Cir. 1990). That burden is on petitioners, and they have failed to meet it.

Section 7491(a), cited by petitioners, does not apply because the examination was begun in 1996, prior to the effective date of the burden of proof rule provided by the section. In any event, the provisions of section 7491(a) would not help petitioners' case. See Higbee v. Commissioner, 116 T.C. __ (June 6, 2001).

To reflect stipulated adjustments,

<u>Decision will be entered</u>

<u>under Rule 155</u>.